# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**JOHN CHAMBERLAIN,**
        **Plaintiff,**

    **v.**                                **Case No. 18-cv-1902**

**METROPOLITAN LIFE INS. CO.,**
        **Defendant.**

---

## DECISION AND ORDER

Plaintiff has brought this ERISA action, challenging the denial of his claim for accidental death benefits. The parties have filed cross-motions for summary judgment.[1] For the reasons that follow, I grant Defendant's motion, deny Plaintiff's motion, and enter judgment for Defendant.

## I. BACKGROUND[2]

Chester Chamberlain ("Chamberlain Senior") was an employee of General Electric and participated in a benefit program governed by the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 et seq. ("ERISA"), that included accidental death insurance, of which Plaintiff is a beneficiary. *See* R. 1-3.

According to an affidavit sworn by Thomas Chamberlain, Chamberlain Senior, Thomas, and Clare Chamberlain[3] were scuba diving near Cozumel, Mexico on May 23, 2017. R. 112, ¶¶ 1-2, 4. According to Thomas, the Chamberlains were instructed to alert

---

[1] Plaintiff's filing is styled as a brief in support of his claim to ERISA benefits. *See* ECF 25. Previously, the Court and parties had agreed on a briefing schedule that would involve each side filing cross-motions for summary judgment on the administrative record, with one response to each. *See* ECF 22. Accordingly, I construe this filing as a motion for summary judgment.

[2] The administrative record is docketed at ECF 24-1 & 24-2. References to the administrative record will noted as "R." followed by the page number.

[3] Thomas, Clare and Plaintiff are Chamberlain Senior's children. Thomas and Clare are not parties to this lawsuit.

the dive master if their oxygen tanks reached a certain minimum level, however Chamberlain Senior gave no such signal before he and the dive master performed an "emergency rise." R. 112-13, ¶¶ 5-8. Upon reaching the surface, Thomas states that Chamberlain Senior was met with a wave that crashed over his head, causing him to ingest a mouthful of saltwater while trying to gasp for air. R. 113, ¶ 9. According to Thomas, his father again gasped for air after clearing the wave, but then appeared to lose consciousness. *Id.*, ¶ 10. The dive master subsequently attempted CPR on Chamberlain Senior to no avail. *Id.*, ¶ 11. Thomas accompanied his father, still unconscious, as he was rushed to a local hospital, leaving shortly thereafter to retrieve his father's wallet. *Id.*, ¶¶ 12-13. When Thomas returned thirty minutes later, Chamberlain Senior had been declared dead. *Id.*, ¶ 14. *See also* R. 146 (notes from hospital records). Thomas declined the hospital's offer to perform an autopsy and decided with his sister to have their father's body cremated in Mexico. R. 114, ¶¶ 15-16. *See also* R. 151-54. In the U.S. State Department's "Report of Death of a U.S. Citizen Abroad," the official cause of death is listed as: "Cardiorespiratory Arrest; Diabetes Mellitus type II; as certified on Mexican Death Certificate by Dr. Vidal Marcelino Villanueva Perez." R. 15. *See also* R. 147-49 (copy of Mexican death certificate); ECF 31, Ex. A (translation of death certificate); R. 146 (hospital notes). The Mexican death certificate listed the type of death as "NATURAL." R. 149. An additional document issued by the Mexican Secretary of Health also indicates cardiorespiratory arrest and diabetes as the causes of death and leaves space for marking the death as an "accident" empty. *See* R. 155, ¶ 22.

In June 2017, the Chamberlain siblings filed claims under Chamberlain Senior's insurance policies. *See* R. 18-21, 72-73. Chamberlain Senior's coverage included three

2

plans: one for basic life insurance,[4] and two for accidental death insurance. R. 1. The

plans provide for payment of accidental death benefits as follows:

> In case of accidental death — death benefits are paid if you die from an injury within 180 days of the accident that caused the injury, or within 3 years of the accident if your death is solely and directly a result of the accident.

R. 247. Further, under the plans, the following accidental losses are not covered:

> Benefits under GE Accidental Death or Dismemberment Insurance and GE Personal Accident Insurance are not paid for losses contributed to or caused by any of the following, as interpreted by the Plan's insurer:
> • Disease or medical or surgical treatment of such disease;
> • Intentionally self-inflicted injury;
> • Physical or mental impairment or medical or surgical treatment of such impairment;
> • Insurrection; or
> • Act of war, or war (whether declared or undeclared).

R. 246. "The plan administrator or a designated representative, such as the claims

administrator, the Pension Board or an insurer of benefits, has the authority and

responsibility to interpret the provisions of the respective plans." R. 320. "Their

interpretations or determinations… shall not be overturned unless proven to be arbitrary

or capricious." R. 344. The plan administrator also possesses the authority to make

findings of fact and adopt rules and procedures. *Id.*

By letters sent in October, November, and December of 2017, Defendant

requested that Plaintiff submit copies of any police or accident reports, autopsy report(s),

toxicology report(s), the Mexican death certificate, newspaper reports (if available), and

any other information about the alleged scuba injury/accident in support of the accidental

death claim. R. 62-63, 100. In February, Plaintiff submitted a letter and Thomas

Chamberlain's affidavit (referenced above) in support of his claim. R. 110-14. Plaintiff was

---

[4] The claims on the basic life insurance plans were approved and paid out. *See* R. 1-3.

ultimately unable to obtain any news clippings, police reports, or additional medical records relating to Chamberlain Senior's death. R. 16.

Defendant denied the accidental death claim, citing the State Department report that listed Chamberlain's death as due to diabetes mellitus and the lack of records provided by Plaintiff, as requested by Defendant on multiple occasions. R. 136-37. Specifically, Defendant concluded that the cause of death finding of cardiorespiratory arrest and diabetes by the Mexican doctor amounted to a "physical disease" which was excluded from the plans' coverage. *Id.* Without any further documentation from Plaintiff, the information in the claim file did not substantiate that Chamberlain Senior died as a result of an accident. *Id.* Plaintiff appealed. R. 140-41.[5]

Defendant upheld the denial, explaining that relevant hospital records and government documents did not mention scuba diving or any accident, only cardiorespiratory arrest and diabetes. Plaintiff's claim was therefore outside the scope of Chamberlain Senior's accidental death policies. Specifically, Defendant's letter reads:

> Your clients' claim for Accidental Death Insurance and Personal Accidental Death Insurance benefits from the General Electric Company benefit plan was denied by our letter of March 16, 2018. The claim was denied because we did not receive sufficient Proof that the death was the result of an accident, and because an exclusion noted in the plan applies.
>
> […]
>
> The information in our claim file does not contain substantial Proof that the death was the direct and sole result of an accidental injury while scuba diving. The record from International Hospital states that the death was the result of cardiorespiratory arrest; a scuba diving accident is not mentioned. The Report of Death of a U.S. Citizen Abroad and the Mexican Death Certificate, both official government documents, state that the death was

---

[5] As evidence, Plaintiff submitted the Thomas Chamberlain affidavit, a picture of Thomas and Clare after their father's cremation, notes from the hospital, death certificates from Mexico, the State Department report, and local and State Department documents concerning the cremation of Chamberlain Senior's remains. *See* R. 142-55.

4

the result of cardiorespiratory arrest and diabetes. As these are physical illnesses or diseases, the Exclusion in the Plan applies in this case.

R. 207-08. *See also* Claim Comments at R. 4 ("The appeal was considered and the entire claim was re-reviewed in full. As there was no Proof presented from the Mexican authorities that the death was the result of a drowning, we are unable to change our initial determination."). Plaintiff then filed this action challenging the denial of benefits.

## II. DISCUSSION

### A. Standard of Review

In the context of a denial of benefits under ERISA, the proper standard of review turns on two factors: (1) whether the plan gives the plan administrator discretion to construe policy terms, and (2) the basis for the decision to deny coverage. *Sellers v. Zurich Am. Ins. Co.*, 627 F.3d 627, 631 (7th Cir. 2010). Under the arbitrary and capricious standard,[6] a reviewing court overturns the decision only where there is an absence of reasoning to support it. *Jackman Fin. Corp. v. Humana Ins. Co.*, 641 F.3d 860, 864 (7th Cir. 2011) (citations omitted). The decision will only be overturned if it is "downright unreasonable." *Tegtmeier v. Midwest Operating Engineers Pension Tr. Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004) (quoting *Carr v. Gates Health Care Plan,* 195 F.3d 292, 295 (7th Cir. 1999)). *See also Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1107–08 (7th Cir. 1998) ("Review under this standard is extremely deferential and has been described as the least demanding form of judicial review… It is not, however, without some teeth."). When review under ERISA is deferential, courts are limited to the information submitted to the administrator. *See Perlman v. Swiss Bank Comprehensive Disability*, 195 F.3d 975, 982 (7th Cir. 1999) (citing cases).

---

[6] There is no dispute that an arbitrary and capricious standard applies. *See* ECF 28, ¶ 8.

## B. MetLife's Decision

Plaintiff argues that MetLife's denial is arbitrary and capricious for three main reasons: (1) Chamberlain Senior's death was an accidental death under the policy because it was not reasonably foreseeable that he would die while scuba diving; (2) Defendant's acceptance of the Mexican death certificate's conclusion at face value without its own further investigation was arbitrary and capricious; and (3) Defendant's use of an incorrect standard on administrative appeal was arbitrary and capricious. Defendant insists that it was reasonable to rely on an official death certificate and medical records, none of which referenced drowning, but instead listed cardiorespiratory arrest and diabetes as the causes of death, against an affidavit that does not even establish that drowning was the ultimate cause of death. Given the circumstances, the inquiry here is focused on weighing the evidence submitted to the administrator and whether there is rational support in that record for denying the claim. Here, Defendant denied Plaintiff's accidental death benefits claim because there was insufficient proof that the death was the result of an accident.

I conclude that Defendant's denial was not arbitrary and capricious and had rational support. The only piece of evidence in the record that supports Plaintiff's claim and theory is an affidavit from his brother. While the affidavit is not insignificant, Plaintiff casts it as controlling and decisive where it should instead be treated as one piece of evidence to be weighed against the rest of the record. Furthermore, the affidavit is not as conclusive as Plaintiff represents. Thomas maintains that he *knows* that Chamberlain Senior ran out of oxygen but also admits that he never *saw* Chamberlain Senior give any

6

type of warning that indicated he was running out of oxygen. *See* R. 112-13, ¶¶ 6-7.[7] Nor does the affidavit provide much detail of any attempts at resuscitation which could further support Plaintiff's theory, such as the expulsion of water from the lungs or stomach, or rule out a plausible conclusion that Chamberlain Senior had a diabetic emergency while diving which, as Defendant points out, is an activity with risk of serious death or injury for those with diabetes. *See* ECF 30 at 12-13.

Against this affidavit are the records provided by local government officials and the hospital to which Chamberlain Senior was rushed. The death certificate prepared in Mexico indicates death caused by cardiorespiratory arrest and diabetes mellitus, lists the cause of death as natural, and leaves space to declare the death an accident unmarked. *See* R. 147-49, 155 at ¶ 22.1. Medical notes prepared and signed by physicians attending to Chamberlain Senior do not contain any mention of drowning, scuba diving, or accidental death. *See* R. 146. Unlike Plaintiff's proffered affidavit, the death certificate was prepared by a trained medical professional recording conclusions for official public records. *See* R. 150 (State Department report indicating cause of death "as certified on Mexican Death Certificate by Dr. Vidal Marcelino Villanueva Perez."). Plaintiff's point that death does not necessarily have to be proven by official government documentation is well taken; conclusions in public records can certainly be rebutted. However, such documents still hold evidentiary weight,[8] particularly in cases with records as sparse as this one, where the evidentiary conflict boils down to a professional, public determination

---

[7] It is also unclear how Thomas knows both that his father gave no signal while underwater *and* what transpired after his father reached the surface. Was he underwater or above the surface when his father and the dive master performed an emergency rise? Did he rise to the surface with them? Did he hear from other persons secondhand? It remains unclear.

[8] For instance, no one would question that it is reasonable for Defendant to require persons filing claims to submit certified copies of death certificates that indicate cause and manner of death. *See* R. 20.

of death versus an affidavit from claimant's sibling, who is not a medical professional and expresses no medical conclusion. *See Ruiz v. Cont'l Cas. Co.*, 400 F.3d 986, 992 (7th Cir. 2005) ("***In light of the lack of objective medical evidence supporting Ruiz's claim*** that he can perform no work he is trained to do, and the inconsistent conclusions of physicians… it was not 'downright unreasonable' for Continental to conclude that Ruiz was not entitled to long-term disability benefits.") (emphasis added).

I raise all of these points not because I have to agree with the decision to deny Plaintiff's claim, but because they provide Defendant rational support to uphold its determination that "[t]he information in the claim file does not substantiate Mr. Chamberlain passed away due to an accident." R. 137. Defendant's determination merely has to be *a* rational determination, not the *only* rational determination. On the record before me, I cannot say that Defendant's decision to rely on an official, local death certificate prepared by a doctor over a testimonial from Plaintiff's brother (that is less than conclusive) was so "downright unreasonable" as to overcome the level of deference owed under the arbitrary and capricious standard. *See Carr*, 195 F.3d at 294 ("Under the arbitrary and capricious standard, it is not our function to decide whether we would reach the same conclusion as the Plan or even rely on the same authority."). *See also Sisto v. Ameritech Sickness & Accident Disability Benefit Plan*, 429 F.3d 698, 701 (7th Cir. 2005) ("Raising debatable points does not entitle Sisto to a reversal under the arbitrary-and-capricious standard."). "[R]eaching a decision amid… conflicting medical evidence is a question of judgment that should be left to [defendant] under the arbitrary-and-capricious standard." *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 578 (7th Cir. 2006). In many ERISA cases, such "conflicting medical evidence" usually involves differences of opinion

8

between a claimant's doctor and a doctor retained by the plan. Here, there is no such conflict; Defendant is relying on determinations made by a doctor who prepared the death certificate, while Plaintiff relied exclusively on an affidavit sworn by his brother. Defendant's denial is further supported by the fact that the record submitted likely contains the only pertinent medical evidence that will ever exist, given that there was no autopsy and there will be no future autopsy given the cremation of Chamberlain Senior's remains. *See* R. 114, ¶¶ 15-16.

This fact also makes remand to MetLife inappropriate. In ERISA cases subject to arbitrary and capricious review, if the administrator did not explore an issue that it should have, a court typically does not enter final judgment on the underlying claim, but remands so that the administrator can reconsider. *See Dorris v. Unum Life Ins. Co. of Am.*, 949 F.3d 297, 304 (7th Cir. 2020). Ordinarily, a case with such a limited record could be remanded. However, Plaintiff points out that there is no point in remanding this case to MetLife because the evidence is not going to improve and there are no more records to gather. ECF 32 at 7. I agree with Plaintiff on this point. Unfortunately, no physical remains of Chamberlain Senior exist such that an autopsy or further investigation could produce more conclusive medical evidence. Remand would only cost both parties more time and resources and would be unlikely to produce a different record or outcome.

Finally, I also find nothing arbitrary or capricious with Defendant's administrative handling of the matter. Defendant allowed Plaintiff plenty of time to submit his claim, requesting more evidence on four separate occasions and allowing him to supplement his claim eight months after it was first filed.[9] Defendant even outlined exactly what

---

[9] Contrary to Plaintiff's assertion, Defendant did consider Plaintiff's February 2017 submission, expressly acknowledging it in its initial denial *See* R. 137.

information and evidence was necessary for Plaintiff prove up his claim. *See* R. 62. I do

not find anything else in the record that indicates an arbitrary lack of consideration by

Defendant, either. I conclude that denying the claim where objectively necessary proof of

accidental death was not submitted does not rise to the level of arbitrary and capricious.

I will grant Defendant's motion and enter judgment in its favor.[10]

## C. MetLife's Fees Request

Defendant also requests an award of attorneys' fees and costs under 29 U.S.C. §

1132(g). ECF 26, ¶ 7. In determining whether a fee award is appropriate under ERISA,

the Seventh Circuit has long recognized two tests, both of which ask whether the losing

party had a legitimate basis to bring its suit and largely involves the same inquiry. *See*

*Jackman Fin. Corp.*, 641 F.3d at 866. Under the first test, an award of fees to a successful

defendant in an ERISA suit "may be denied if the plaintiff's position was both 'substantially

justified'—meaning something more than non-frivolous, but something less than

meritorious—and taken in good faith, or if special circumstances make an award unjust."

*Id.* (quoting *Herman v. Central States, Southeast & Southwest Areas Pension Fund*, 423

---

[10] Plaintiff also asserts that Defendant has a serious conflict of interest. *See* ECF 25 at 7-9. If the circumstances indicate that probably the decision denying benefits was decisively influenced by a conflict of interest, it must be set aside. *Marrs v. Motorola, Inc.*, 577 F.3d 783, 789 (7th Cir. 2009). Because of the nature of ERISA cases, it is "not the existence of a conflict of interest… but the *gravity* of the conflict, as inferred from the circumstances, that is critical." *Id.* As Defendant points out, the claim at issue here is for roughly $450,000, far from unusual in an ERISA case, and Defendant gave Plaintiff plenty of time and guidance to submit more evidence to support his accidental death benefits claim, suggesting a concern for fairness. Nor is there any other indication in the record that Defendant was decisively influenced by a conflict of interest. Any conflict here is not more serious than in standard ERISA cases and warrants only this brief mention. *See*, *e.g.*, *Chalmers v. Quaker Oats Co.*, 61 F.3d 1340, 1344 (7th Cir. 1995) (explaining that corporation with billions in annual revenue "not likely to flinch at paying out $240,000"); *Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 409 (7th Cir. 2004) ("[M]ost insurers are well diversified, so that the decision in any one case has no perceptible effect on the bottom line... Unless an insurer or plan administrator pays its staff more for denying claims than for granting them, the people who actually implement these systems are impartial."). *See also Dragus v. Reliance Standard Life Ins. Co.*, 882 F.3d 667, 673 (7th Cir. 2018) ("The Supreme Court has directed us that a conflict of interest should 'act as a tiebreaker when the other factors are closely balanced.'").

F.3d 684, 696 (7th Cir. 2005)). The second test involves five factors, however, I lack information necessary for the first four, which leaves only the "relative merits of the parties' positions" factor. *Id.*

Here I find that Plaintiff had a legitimate basis to bring this case and do not find any bad faith on his part. Admittedly, this is an unusual case. Although his suit was not successful, Plaintiff's decision to initiate it was understandable and somewhere between non-frivolous and meritorious. A fee award is not warranted.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that Defendant's motion for summary judgment (ECF 26) is **GRANTED** and Plaintiff's motion for summary judgment (ECF 25) is **DENIED**. Defendant's decision denying Plaintiff's claim for accidental death benefits is affirmed. The Clerk of Court shall enter final judgment in favor of Defendant.

**IT IS FURTHER ORDERED** that Defendant's request for fees and costs under 29 U.S.C. § 1132(g) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 3rd day of August, 2020.

s/Lynn Adelman
LYNN ADELMAN
District Judge